**THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| Obdulia Rodriguez and Maria Valenzuela, | § | |
|     Plaintiffs, | § | |
| | § | |
| v. | § | **CLASS ACTION** |
| | § | **COMPLAINT** |
| TODD GREINER FARMS PACKING, LLC | § | Civil Action |
| (D/B/A TODD GREINER FARMs), and | § | No: 21-CV-_____ |
| SARAH GREINER, | § | |
|     Defendants. | § | JURY TRIAL DEMANDED |

**PLAINTIFFS' ORIGINAL CLASS ACTION COMPLAINT**

1.     In 2019, Plaintiffs, along with over 200 farmworkers, worked for Todd Greiner Farms, sorting, and packing asparagus to be consumed by households throughout Michigan and around the country. During long and strenuous hours of work, Defendants exposed Plaintiffs and over 200 workers to known pesticides and hazardous chemicals, in violation of state and federal health and safety laws. Defendants ignored the workers' complaints regarding their symptoms, which included headaches, dizziness, itchy throats, stinging and watery eyes, and for Plaintiff Rodriguez, loss of consciousness requiring emergency medical care.  Defendants misled Plaintiffs and the other workers into believing that they were experiencing a "virus" instead of a reaction to widescale chemical exposure.

2.     Plaintiffs and the other workers on the asparagus packing line worked six to seven days a week, twelve hours a day, to meet Greiner Defendants' demand.  Plaintiffs stood on the packing line, performing the same motion repeatedly for countless hours.  They were given minimal breaks even when their workday stretched beyond twelve hours and were often left unable to use the bathroom, as Defendants only provided access to four bathrooms for over 200 packing warehouse employees.

3.      Plaintiffs bring this action against Defendants under the Migrant and Seasonal Agricultural Worker Protection Act (AWPA) 29 U.S.C. § 1801, *et seq*., and under Michigan law for intentional tort and fraud.

4.      Named Plaintiffs' file their AWPA and intentional tort claims as a class action pursuant to Federal Rule of Civil Procedure 23(a), 23(b)(1), 23(b)(2), and (b)(3) on behalf of themselves and all migrant or seasonal agricultural workers employed by Defendants at their Jackson Facility who worked in the packing and sorting warehouse during the 2019 asparagus season.

5.      As relief, Plaintiffs seek to recover their unpaid wages, liquidated damages, statutory damages, pre-judgment interest, other damages to make them whole, injunctive and equitable relief, and attorneys' fees and costs.

## JURISDICTION AND VENUE

6.      The Court has original subject matter jurisdiction over the instant action pursuant to 28 U.S.C. § 1331 (federal question), and the Migrant and Seasonal Agricultural Worker Protection Act ("AWPA"), 29 U.S.C. § 1854(a).

7.      Jurisdiction over supplemental state law claims is proper under 28 U.S.C. § 1367.

8.      Supplemental jurisdiction is also proper as Plaintiffs' state law claims share a common nucleus of operative fact with Plaintiffs' federal claims and are most efficiently resolved together in one court.

9.      Venue is proper in this Court under 28 U.S.C. § 1391(b)(1) and (2) as this is the judicial district where defendants reside and in which a substantial part of the events or omissions giving rise to the claim occurred.

## PARTIES

10.     At all relevant times, Plaintiffs and other similarly situated persons were migrant or seasonal agricultural workers within the meaning of 29 U.S.C. §1802 (8) and (10).

11.     Plaintiff Obdulia Rodriguez ("Mrs. Rodriguez") is an adult residing in Oceana County, Michigan and a seasonal agricultural worker pursuant to 29 U.S.C. § 1802 (10).

12.     Plaintiff Rodriguez worked for Defendants during the 2019 asparagus season.

13.     Plaintiff Maria Valenzuela ("Mrs. Valenzuela") is an adult residing in Oceana County, Michigan and a seasonal agricultural worker pursuant to 29 U.S.C. § 1802 (10).

14.     Plaintiff Valenzuela worked for Defendants during the 2019 asparagus season.

15.     Defendant Todd Greiner Farms Packing LLC, d/b/a Todd Greiner Farms (hereinafter "Greiner Packing") is a Michigan domestic corporation, doing business for the purpose of, among others, producing and marketing asparagus and other agricultural products within Michigan.

16.     Asparagus produced and packaged by Defendants is sold locally and at national chains, such as Walmart.

17.     Greiner Packing has two facilities one located at 2542 N. 128th Ave, Hart, Michigan, 49420 and another located at 1938 W. Jackson Avenue, Hart, Michigan, 49420 (the "Jackson Facility").

18.     Plaintiffs and putative Class Members worked at the Jackson Facility during the 2019 asparagus season.

19.     Defendant Sarah Greiner (hereinafter "Defendant Greiner") is an adult residing in Oceana County, Michigan.

20.    Defendant Greiner is a member of Greiner Packing and controls the day-to-day operations of Greiner Packing's Jackson Facility. Either personally and/or through her personal agents and employees, Defendant Greiner directed, controlled, and supervised the work of the Plaintiffs and similarly situated persons as part of her regular involvement in the day-to-day operations of Geiner Packing.

21.    Defendant Greiner was physically present from time-to-time in the packing facilities owned, operated, or controlled by Greiner Packing and provided verbal and non-verbal guidance and instructions to one or more of the named Plaintiffs, their supervisors, and/or the workers the Plaintiffs seek to represent in this action.

22.    At all times relevant to this complaint, Defendants Greiner and Greiner Packing (hereinafter the "Greiner Defendants") were agricultural employers within the meaning of 29 U.S.C. § 1802(2) and 29 C.F.R. § 500.20(d).

23.    The Greiner Defendants own or operate a farm and processing establishment that recruits, solicits, hires, employs, furnishes, or transports migrant and seasonal agricultural workers.

24.    At all times relevant, the Greiner Defendants employed Plaintiffs and other class members within the meaning of 29 U.S.C. § 1802(5).

25.    The Greiner Defendants jointly employed Plaintiffs and class members and are jointly and severally liable for the violations of law alleged in this complaint.

**FACTUAL ALLEGATIONS**

26.    Defendants' 2019 asparagus season ran from approximately May 2019 through July 2019.

27.    Plaintiff Valenzuela worked for the Greiner Defendants as a seasonal farmworker first in 2009 and then from 2016 through 2019.

4

28.     During the 2019 asparagus season, Plaintiff Valenzuela was assigned to work as a line leader on the asparagus packing line at Defendants' Jackson Facility.

29.     During the 2019 asparagus season, Plaintiff Valenzuela typically worked Monday through Saturday, from 5:30 am until approximately 6:45 p.m. She was required to work on some Sundays.

30.     During the 2019 asparagus season, Defendants paid Plaintiff Valenzuela $12.25 per hour.

31.     As a line leader, Plaintiff Valenzuela was tasked with preparing the line for the day, including getting supplies ready, and would take a worker's place when a worker went on a bathroom break.

32.     Plaintiff Rodriguez was hired to work at Greiner Farm's Jackson Facility in May 2019, for the first time.

33.     Defendants paid Plaintiff Rodriguez $10.75 per hour. She typically worked Monday through Sunday, seven days a week, from approximately 6:00 a.m. to 6:00 p.m., twelve hours per day. Sometimes she was required to work until 7:00 pm.

34.     Plaintiff Rodriguez was assigned to work on line number two, where she had to pick the correct sized asparagus, ensure that asparagus stayed on the moving conveyor belt, and sort slots.

35.     Sarah Greiner and Rosie Mascorro directly supervised Plaintiffs Valenzuela and Rodriguez and similarly situated individuals.

36.     Plaintiff Rodriguez's line leader was a male worker with the last name Mascorro.

**Defendants' Jackson Facility**

37.     Defendants maintained tanks that contained the chemicals used to clean the asparagus being sorted and packed by Plaintiffs and similarly situated persons. The Greiner Defendants owned and operated asparagus fields where asparagus was planted and harvested by migrant and seasonal farmworkers.

38.     The Greiner Defendants transported the harvested asparagus from their fields to the Jackson Facility where Plaintiffs and similarly situated individuals sorted and packed the asparagus.

39.     At the Jackson Facility, asparagus from the fields were first washed down with a chemically treated water solution and then placed in a refrigerator.

40.     At the Jackson Facility, the refrigerated asparagus was then passed down a conveyer belt where they were sprayed with chemically treated water dispensed from a pipe that ran from the tanks.

41.     At the Jackson Facility, Plaintiffs and similarly situated individuals sorted and packed the asparagus that was sprayed with the chemically treated water.

42.     Defendants maintained tanks that contained the chemicals used to clean the asparagus being sorted and packed by Plaintiffs and similarly situated persons.

43.     Upon information and belief, Defendants cleaned the tanks containing the chemicals used to clean asparagus approximately every three days.

**Symptoms Related to 2019 Chemical Exposure at the Jackson Facility**

44.     Beginning around May 2019, Plaintiffs and similarly situated persons working on the asparagus packing line began to smell a strong chlorine-like chemical odor in the Jackson Facility packing room.

6

45.     The odor permeated the Jackson Facility packing room but was stronger the closer Plaintiffs and similarly situated persons were to the pipes that sprayed the asparagus with the chemically treated water.

46.     The odor was also stronger the farther away Plaintiffs and other similarly situated persons were to the entrance and exit of the packing room.

47.     The odor was also stronger the mornings after the tanks containing chemicals were cleaned.

48.     Starting in May 2019, Plaintiff Valenzuela and Rodriguez experienced watery and puffy eyes, itchy throats, headaches, and itchy skin.

49.     Plaintiffs were not the only workers to experience these symptoms at the Jackson Facility during the 2019 asparagus season.

50.     Plaintiff Rodriguez witnessed many similarly situated persons complain amongst each other about the smell and physical ailments including watery eyes, headaches, and itchy throats.

51.     Plaintiff Valenzuela received numerous complaints from workers on her line about the smell and physical ailments including watery and puffy eyes, itchy noses and throats, and headaches.

52.     Plaintiff Valenzuela relayed those complaints to Rosie Mascorro, the supervisor for all line workers, and told Rosie Mascorro that she and other workers could not cope with the smell and their eyes were puffy and watery.

53.     Rosie Mascorro responded to Plaintiff Valenzuela that there was nothing she could do.

54.     At the beginning of the 2019 asparagus season, disposable face masks were stored in a closet at the Jackson Facility and were available for use by the Plaintiffs and similarly situated persons.

55.     Plaintiffs and similarly situated persons started to wear the disposable face masks because of the strong odor and symptoms they were experiencing.

56.     Plaintiff Valenzuela would try to get face masks for herself and the individuals on her line who complained about the strong odor, but the masks were often not available.

57.     Around the end of May 2019, Defendants stopped providing enough disposable masks for all workers at the Jackson Facility.

58.     Rosie Mascorro, Defendants' agent, told Plaintiffs and other similarly situated persons that that Defendant Greiner was not going to provide more than one box of masks every morning and that they were available on a first come, first served basis.

59.     Rosie Mascorro, Defendants' agent, accused Plaintiffs and similarly situated individuals of exaggerating and told Plaintiff and other workers that if they wanted masks that workers would need to purchase their own masks.

60.     Around the end of May 2019, Defendant Greiner came to the line floor and had Rosie Mascorro speak through a megaphone to interpret what Defendant Greiner was saying. While Plaintiffs and similarly situated persons continued on the asparagus packing line, Defendant Greiner told all the workers, including Plaintiffs, that nothing was wrong with the company's chemicals and that what they were experiencing was a virus, like the flu and not due to the chemicals being used to clean the asparagus.

61.     Defendant Greiner also told the asparagus packing line workers, including Plaintiffs and similarly situated persons, that the Defendants would provide more jugs of water and enough cups but that did not happen before the end of the 2019 asparagus season.

62.     Plaintiffs and similarly situated persons continued to work with the strong odor smell and the accompanying symptoms, as they could not afford to leave their employment.

63.     Some Class Members left their employment with Defendants prior to the end of the asparagus season due to the smell and accompanying symptoms.

**Plaintiff Rodriguez's Medical Emergency**

64.     On June 14, 2019, Defendants did not provide Plaintiff Rodriguez with a face mask.

65.     On June 14, 2019, Plaintiff Rodriguez was working on the asparagus packing line when the chemical odor from the treated water being sprayed on the asparagus overpowered her.

66.     Plaintiff Rodriguez began coughing and wheezing and felt unwell.

67.     Plaintiff Rodriguez went to the bathroom, where she lost consciousness.

68.     Plaintiff Rodriguez was brought out of the bathroom by two female co-workers who brought her to the breakroom next to the bathroom.

69.     While in the breakroom Plaintiff Rodriguez suffered from numbness in her feet, dizziness, and shortness of breath.

70.     Plaintiff Rodriguez was frightened and thought she was going to die. She worried for her children who were young and depended on her.

71.     A female employee in the Jackson Facility office, whose name is unknown to Plaintiff Rodriguez, called an ambulance.

72.     Defendant Greiner and her husband, Todd Greiner, arrived at the breakroom while Plaintiff Rodriguez was waiting for the ambulance.

73.    Plaintiff Rodriguez saw Todd Greiner take a drink of water and then spit it out on the floor. Plaintiff Rodriguez felt bad watching him do this, as she understood it to mean he was upset at her.

74.    Plaintiff Rodriguez was transported via ambulance to Mercy Health emergency room, where she was treated and prescribed an inhaler.

75.    Plaintiff Rodgriguez was also given a work restriction notice requiring her to wear a mask while at work.

76.    Plaintiff Rodriguez had to use the prescribed inhaler the rest of the 2019 asparagus season to alleviate her symptoms.

77.    Plaintiff Rodriguez presented the work restriction notice to Defendant Greiner, who through an interpreter accused Plaintiff Rodriguez of exaggerating and told her they were not going to pay for anything like the ambulance or hospital costs.

78.    Plaintiff Rodriguez was shocked and afraid she would have to pay thousands of dollars for the ambulance and hospital costs.

79.    Even after Plaintiff Rodriguez's medical emergency, the strong chemical smell at the Jackson Facility continued.

80.    Plaintiff Rodriguez continued to experience symptoms including headaches, watery eyes, and a runny nose.

81.    Defendants then provided Plaintiff Rodriguez with a mask but failed to provide other workers experiencing similar symptoms with a mask.

82.    Plaintiff Rodriguez used the inhaler prescribed by the emergency room doctor while working for Defendants at the Jackson Facility to alleviate the symptoms she continued to

experience due to the strong chemical smell. For approximately three to four months after finishing her work for Defendants, Plaintiff Rodriguez continued suffering from headaches.

**Bathroom Access Issues**

83.     Defendants only maintained two unlocked bathrooms and two locked bathrooms to be shared by the asparagus packing line workers at the Jackson Facility.

84.     These four bathrooms were not sufficient for the over 200 asparagus packing line workers at the Jackson Facility.

85.     Defendants maintained two additional private bathrooms near the offices in the Jackson Facility, but the private bathrooms were used only by Defendants, their office staff, and individuals in the receiving department and were not made available to Plaintiffs or similarly situated persons on the asparagus packing line.

86.     Due to the lack of sufficient bathrooms, Plaintiffs and similarly situated persons at the Jackson Facility were repeatedly and consistently denied access to bathrooms.

87.     Toward the end of the season, Plaintiffs and similarly situated individuals were required to sign-in and out to use the bathrooms.

88.     Defendants told Plaintiffs and similarly situated persons to use the bathrooms during their breaks only.

89.     Plaintiffs were often not able to use the bathroom during their ten-minute break or half hour lunch break because there were not enough bathrooms for workers who needed them to go during break time.

90.     Toward the end of the season 2019, Defendants also failed to provide soap to Plaintiffs and similarly situated persons every day.

91.     Workers would report the soap dispenser and paper towels were empty and it would take until the next day to replenish the soap dispenser.

92.     Defendant also stopped providing paper towels for the kitchen area.

**2019 MIOSHA Investigation**

93.     On or about July 10, 2019, the Michigan Occupational Safety and Health Agency ("MIOSHA") opened an investigation into the reports of chemical exposure and lack of sufficient bathrooms at Defendants' Jackson Facility.

94.     On or about July 24, 2019, MIOSHA conducted an on-site inspection of Defendants' Jackson Facility.

95.     As a result of their investigation, MIOSHA cited Defendants with four serious violations of federal and state health and safety standards, specifically:

a)   "1910.141(c)(l)(i): OH PART 474, SANITATION [REF 325.47401]" due to the number of toilet facilities available for use in the packing house were insufficient for the number of employees working within the facility.

b)   "1910.1200(e)(l): OH PART 430, HAZARD COMMUNICATION [REF 325.77002]" due to employees utilizing and being exposed to several hazardous chemicals in the workplace and Defendants failing to have a written hazard communication program, safety data sheets for all hazardous chemicals, and not providing employees with information or training regarding the hazardous chemicals.

c)   "408.1014j: ACT 154, MICHIGAN OCCUPATIONAL SAFETY AND HEALTH ACT" due to Defendants' failure to identify the location of the safety data sheets for the hazardous chemicals being used and not providing contact information or the name of the individual responsible for maintaining the safety data sheets.

d)   "408.1014c: ACT 154, MICHIGAN OCCUPATIONAL SAFETY AND HEALTH ACT" due to Defendants' failure to identify the contents of piping systems that conveyed compressed air throughout the packing house.

96.     MIOSHA's investigation concluded that approximately 200 individuals working at the Jackson Facility were exposed to the following chemicals:

12

a)   "Madison Chemical Company, Chlor-Clean 12.5 a Chlorine sanitizer"

b)   "Madisan 75 Quaternary Ammonium Chloride sanitizer"

c)   "Spectra Yellow a Chlorinated Alkaline cleaner"

**Pesticides and Chemicals Defendants Used During the 2019 Asparagus Season**

97.    Chlor-Clean 12.5 is a registered pesticide with the Environmental Protection Agency ("EPA"), registration number 72315-6-110.

98.    The Madison Chemical Company data sheet states that Chlor-Clean 12.5 may "cause severe skin and eye irritation or chemical burns to broken skin. Causes severe eye damage. Harmful if swallowed. When handling, wear goggles, faceshield, impermeable gloves, rubber apron, rubber boots and other equipment as required to avoid contact."

99.    The Madison Chemical Company data sheet further states that Chlor-Clean 12.5 is a "STRONG OXIDIXING AGENT: Mix only with water according to label directions. Mixing CHLOR-CLEAN 12.5 with chemicals (e.g. ammonia, acids, detergents, etc.) or organic matter (e.g. urine, feces, etc.) will release chlorine gas which is irritating to eyes, lungs and mucous membranes."

100.    Madisan 75 Quaternary Ammonium Chloride is a registered pesticide with the Environmental Protection Agency ("EPA"), registration number 10324-81-110.

101.    The Madison Chemical Company data sheet states that 8Madisan 75 Quaternary Ammonium Chloride is "Corrosive. Causes irreversible eye damage and skin burns. Harmful if swallowed, inhaled or absorbed through the skin. Avoid breathing spray mist. Do not get in eyes, on skin or on clothing. When handling, wear goggles, impermeable gloves and other equipment as required to avoid contact. Wash thoroughly with soap and water after handling and before eating,

drinking, chewing gum, using tobacco or using the toilet. Remove contaminated clothing and wash clothing before reuse."

102.    Spectra Yellow a Chlorinated Alkaline is not registered as a pesticide with the EPA and according to the Madison Chemical Company website, the chemical is "[d]esigned as a cost-effective potassium hydroxide based, general-purpose, chlorinated alkaline foaming cleaner."

103.    The Madison Chemical Company data sheet further states that Spectra Yellow a Chlorinated Alkaline "[c]auses burns to skin, eyes and alimentary canal. Harmful if swallowed. Contains potassium hydroxide and sodium hypochlorite. When handling, wear goggles, face shield, impermeable gloves and other equipment as required to avoid contact. … 'DO NOT MIX SPECTRA YELLOW X WITH ACIDS! THIS WILL FORM TOXIC CHLORINE GAS.'"

**Defendants Failure to Mitigate Plaintiffs' Chemical Exposure**

104.    Defendants received numerous complaints from workers at the Jackson Facility packing room regarding the strong odor in the room and its physical effects on Plaintiffs and similarly situated persons.

105.    Defendants knew or should have known of the widespread symptoms Plaintiffs and similarly situated persons were suffering.

106.    Defendants did not provide Plaintiffs or similarly situated persons with any information orally or in writing about the exact chemicals being used to clean the asparagus.

107.    Defendants did not provide Plaintiffs or similarly situated persons with any safety data sheets regarding the chemicals being used to clean the asparagus.

108.    Defendants did not provide Plaintiffs or similarly situated persons with proper and adequate notice and warnings concerning the health risks of the chemicals being used to clean the

asparagus and did not provide proper and adequate training and instructions for working safely in the presence of those chemicals.

109.    Defendants stopped providing face masks to Plaintiffs and similarly situated persons exacerbating their symptoms.

110.    Defendants did not provide proper and adequate personal protective equipment to the Plaintiffs and similarly situated persons who were required to work in the chemicals being used at the Defendants' facility.

111.    Defendants lied to Plaintiffs and similarly situated persons regarding the cause of their symptoms.

## CLASS ALLEGATIONS

112.    Representative Plaintiffs Valenzuela and Rodriguez bring the claims set forth in Counts I and II of this complaint on behalf of themselves and all workers similarly situated as a class action pursuant to Rule 23(a), (b)(1), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure.

113.    Representative Plaintiffs seek to represent a class consisting of all migrant or seasonal agricultural workers employed by Defendants at their Jackson Facility who worked in the packing and sorting warehouse during the 2019 asparagus season.

114.    Class members should be readily identifiable from Defendants' records.

115.    The Plaintiffs and each person that they seek to represent were injured as a result of the Defendants' actions relating to the storage, handling, mixing, and use of the chemicals at issue.

116.    The class is so numerous as to make joinder impractical. The number of individuals in the proposed class would exceed 200 individuals.

117.    Joinder of all class members for the proposed class would also be impracticable, if not impossible, based in part upon the fact that some of the proposed class members are migrant or seasonal farmworkers and most may not speak English.

118.    Prosecuting separate actions on behalf of individual class members would create the risk of inconsistent or varying adjudications creating incompatible standards of conduct.

119.    The Defendants acted wrongfully in the same basic manner to the entire class.

120.    There are questions of law and fact common to the class.  These include but are not limited to:

   a)  whether Defendants failed to comply with the working arrangement when they exposed Class Members to chemicals and failed to provide sufficient bathrooms in violation of MIOSHA regulations;

   b)  whether Defendants providing false and misleading information concerning the terms and conditions of Class Members' employment when they told Class Members that their symptoms related to a "virus" and not the chemicals used on the asparagus; and

   c)  whether Defendants had actual knowledge that injury was certain to occur from their deliberate acts regarding the storage, handling, mixing or use of the chemicals and whether they willfully disregarded that knowledge.

121.    The claims of the Representative Plaintiffs are typical of the claims of the class. These typical, common claims predominate over any questions affecting only individual class members.

122.    The interests of Plaintiffs in the claims are in no way antagonistic or adverse to those of other similarly situated persons.

123.    Plaintiffs will fairly and adequately represent the interests of the class.

124.    Counsel representing the Representative Plaintiffs have the resources, expertise, and experience to prosecute this action on behalf of the class.

## CAUSES OF ACTION

### COUNT I
### MIGRANT AND SEASONAL AGRICULTURAL WORKER PROTECTION ACT
### (AWPA)

125.    Plaintiffs, individually and on behalf of similarly situated persons, reallege and incorporate the allegations set forth above as if fully set forth herein.

126.    This count is brought as a class action pursuant to the Migrant and Seasonal Agricultural Worker Protection Act (AWPA), 29 U.S.C. § 1801 et al., on behalf of all migrant or seasonal agricultural workers employed by Defendants at their Jackson Facility who worked in the packing and sorting warehouse during the 2019 asparagus.

127.    Defendants violated the following provisions of the AWPA:

   a)  29 U.S.C. §1832(c) and 29 U.S.C. § 1822 (c) by violating the terms of the working arrangement between Defendants and Plaintiffs and similarly situated persons.

   b)  29 U.S.C § 1831(e) and 29 U.S.C. § 1831(f) by providing false and misleading information concerning the terms and conditions of Plaintiffs' and similarly situated persons' employment.

128.    The working arrangement between Plaintiffs and similarly situated persons and Defendants implied that the Defendants would follow federal and state health and safety labor protection standards.

129.    The Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA"), administered by the USEPA, governs the use of pesticides in the United States. 7 U.S.C. §§ 136-136y.

130.    Under the FIFRA, the USEPA created protections for agricultural workers through pesticide-specific restrictions and label requirements, called the Worker Protection Standards ("WPS"). 40 C.F.R. Part 170.

131.    Defendants are agricultural employers within the meaning of the WPS.

132.    Plaintiffs and similarly situated persons' working arrangement incorporates the WPS.

133.    Under the WPS, the agricultural employer must assure that workers receive required protections. *Id.* §§ 170.7(a); 170.309(a), (b).

134.    The WPS requires agricultural employers who have "reason to believe" that any worker has been injured by exposure to pesticides, regardless of whether the exposure occurred as the result of "application, splash, spill, drift, or pesticide residues," to provide the exposed person or medical personnel "any obtainable information" on the product name, registration number, and active ingredients of the products to which the person was exposed, antidote and first aid information, and circumstances of the application and exposure. *Id.*

135.    Throughout the 2019 asparagus season, Defendants had reason to believe that Plaintiffs and similarly situated persons had been injured by exposure to pesticides but failed to provide them obtainable information, including the name, registration number, and active ingredients of the products to which they were exposed, antidote and first aid information, and circumstances of the exposure.

136.    On June 14, 2019, Defendants had reason to believe that Plaintiff Rodriguez had been injured by exposure to pesticides but failed to provide them obtainable information, including the name, registration number, and active ingredients of the products to which they were exposed, antidote and first aid information, and circumstances of the exposure.

137.    Defendants violated the working arrangement by failing to meet the Worker Protection Standards under 40 C.F.R. Parts 156 and 170, and similar Michigan state law regulations resulting in Plaintiffs' and similarly situated persons' exposure to harmful pesticides.

138.    Defendant violated these terms of the working arrangements without justification.

139.    Defendants further violated this working arrangement by not following field sanitation regulations under MCL 408.1014n, Part 500, by, among other things failing to provide a sufficient number of toilets and hand washing facilities within a reasonable distance from where Plaintiffs and similarly situated persons were working.

140.    Defendants' violations of field sanitation requirements created and/or increased the risk of harm to the Plaintiffs and similarly situated persons from inadequate access to field sanitation/bathrooms during the workday.

141.    Defendant violated these terms of the working arrangements without justification.

142.    Defendants knowingly provided false or misleading information to Plaintiffs and the members of the AWPA Class that they were not exposed to harmful chemicals and were simply suffering from a "virus."

143.    As a result of Defendants' actions, Plaintiffs and similarly situated persons have suffered damages, and are entitled to payment of actual or statutory damages pursuant to 29 U.S.C. § 1854(c)(1) for each agricultural season that occurred in the 3-year time period immediately preceding the date on which this action was filed and continuing, on information and belief, through the date that final judgment is entered in this action.

## COUNT II
## INTENTIONAL TORT UNDER MCL 418.131

144.    Plaintiffs, individually and on behalf of similarly situated persons, reallege and incorporate the allegations set forth above as if fully set forth herein.

145.    At all relevant times, the Defendants purchased, controlled, and applied the 2019 chemicals used to wash the asparagus that was sorted and packed by Plaintiffs and similarly situated persons.

146.    Defendants knew that the chemicals used to wash the asparagus that was sorted and packed by Plaintiffs and similarly situated persons included known pesticides.

147.    Defendants knew that the chemicals used to wash the asparagus should only be stored, handled, mixed, and used as directed in manufacturer's instructions, material safety data sheets, and other safety information, and in accordance with federal and state laws, regulations, rules, standards, and guidelines.

148.    Defendants knew that improper storage, handling, mixture, or use of the chemicals used to wash the asparagus presented a significant risk of harm to Plaintiffs and similarly situated persons, including but not limited the risk of creating chlorine gas.

149.    Defendants had a duty to ensure they were complying with all manufacturer's instructions, material safety data sheets, and related safety information and all federal and state laws, regulations, rules, standards, and guidelines regarding the safe storage, handling, mixture, or use of the chemicals used to wash the asparagus.

150.    Defendants had a duty to ensure that they were complying with all manufacturer's instructions, material safety data sheets, and other safety information, and all federal and state laws, regulations, rules, standards, and guidelines regarding notice, information, instruction, training, warnings, and personal protective equipment for persons working at facilities where the chemicals used to wash the asparagus were stored, handled, mixed, or used.

151.    Defendants had a duty to ensure that Plaintiffs and similarly situated persons had a reasonably safe place to work.

152.    Defendants breached their duties by knowing and deliberate acts including but not limited to:

20

a.  Not notifying, informing, or otherwise warning the Plaintiffs and similarly situated persons of the chemicals being used to treat the asparagus they were required to handle;

b.  Not notifying, informing, or otherwise warning the Plaintiffs and similarly situated persons regarding the risk of harm from the chemicals being used to treat the asparagus;

c.  Not notifying, informing, or otherwise warning the Plaintiffs and similarly situated persons regarding the safe storage, handling, mixing, or use of the chemicals being used to treat the asparagus;

d.  Not informing, instructing, or otherwise training the Plaintiffs and similarly situated persons regarding the chemicals being used to treat the asparagus;

e.  Not informing, instructing, or otherwise training the Plaintiffs and similarly situated persons regarding the risk of harm from the chemicals being used to treat the asparagus;

f.  Not informing, instructing, or otherwise training the Plaintiffs and similarly situated persons regarding the safe storage, handling, mixing, or use of the chemicals being used to treat the asparagus;

g.  Not informing, instructing, or otherwise training the Plaintiffs and similarly situated persons regarding proper use of personal protective equipment to avoid and mitigate the risk of harm from the chemicals used to treat the asparagus;

h.  Not providing the Plaintiffs and similarly situated persons with appropriate personal protective equipment to avoid and mitigate the risk of harm from the chemicals being used to treat the asparagus; and

i.  Providing false information to the Plaintiffs and similarly situated persons regarding the risk of harm and harms occurring from the chemicals being used to treat the asparagus;

j.  Other knowing and deliberate acts and omissions that caused injury to the Plaintiffs and similarly situated persons.

153.    Defendants knew that the Plaintiffs and similarly situated persons would be and were being injured and willfully disregarded that knowledge.

21

154.     As a direct and proximate result of the negligent acts and omissions of the Defendants, the Plaintiffs and similarly situated persons suffered consequent injuries and damages.

155.     As of result of Defendants' deliberate acts, Plaintiffs and similarly situated persons suffered financial losses, physical and emotional injury.

156.     The Plaintiffs and similarly situated persons are entitled to compensatory damages and have, and will in the future, suffer damages including but not limited to lost wages and income, loss of earning capacity, reasonable and necessary medical expenses, pain and suffering, mental anguish, fright and shock, denial of social pleasure and enjoyments, embarrassment, humiliation and mortification, disability, and miscellaneous expenses.

## COUNT III
### FRAUD (Intentional and Silent)

157.     Plaintiffs reallege and incorporate the allegations set forth above as if fully set forth herein.

158.     Defendants had a duty to disclose any actual or potential pesticide or chemical exposure to Plaintiffs.

159.     Defendants failed to disclose pesticides and chemicals they were being exposed to at the Jackson Facility.

160.     Defendants made false statements regarding the reason for Plaintiffs' symptoms and led Plaintiffs to believe their symptoms were related to a "virus" and not widespread chemical exposure.

161.     Plaintiffs relied on Defendants' silence and false statements to continue working for Defendants through the end of the 2019 asparagus packing season.

162.     Plaintiffs were harmed by Defendants' silence and false statements in that they suffered financial losses, physical, and emotional harm.

## **PRAYER FOR RELIEF**

WHEREFORE Plaintiffs on behalf of themselves and similarly situated persons respectfully demand a jury trial and prays that this Honorable Court:

(a)  Pursuant to Rule 23, certify named Plaintiffs Obdulia Rodriguez and Maria Valenzuela as representatives of a class of similarly situated persons on Counts I and II of this Complaint;

(b)  Grant declaratory relief that Defendants have violated the rights of named Plaintiffs and similarly situated persons;

(c)  Award Plaintiffs and similarly situated persons all damages available under the AWPA in an amount that is fair, just and reasonable, including but not limited to statutory damages and actual damages for past, present and future medical expenses, wage loss, physical and emotional distress, mental anguish, humiliation and embarrassment, together with other actual damages and punitive damages;

(d)  Award Plaintiffs and all similarly situated persons all damages available under pendent state law claims in an amount that is fair, just and reasonable, including but not limited to compensatory damages for past, present and future medical expenses, wage loss, physical and emotional distress, mental anguish, humiliation and embarrassment, together with other compensatory damages, and exemplary damages;

(e)  Award Plaintiffs and similarly situated persons their reasonable interest, costs, and attorneys' fees; and

(f)  Grant such other relief as this Court deems equitable just and proper.

Dated: March 9, 2021                         Respectfully Submitted,

**MICHIGAN IMMIGRANT RIGHTS CENTER**                         **SUGAR LAW CENTER FOR ECONOMIC AND SOCIAL JUSTICE**

*/s/Diana E. Marin*                         */s/ John Philo*
Diana E. Marin (P81514)                         John Philo (P52721)
dmarin@michiganimmigrant.org                         jphilo@sugarlaw.org
Anna M. Hill (P78632)                         Anthony D. Paris (P71525)
ahill@michiganimmigrant.org                         tparis@sugarlaw.org
Susan Reed (P66950)                         4605 Cass Ave, 2nd Floor
susanree@michiganimmigrant.org                         Detroit, MI 48201
15 S Washington Street, Suite 201                         Telephone: (313) 993-4505
Ypsilanti, MI 48197                         Facsimile: (313) 887-8470
Telephone: (734) 239-6863
Facsimile: (734) 998-9125

***Plaintiffs' Counsel***